Cecil WOODS and Martha Nell Woods, Plaintiffs in Error,

v.

Richard A. GOFF, Defendant in Error.
No. 37646.

Supreme Court of Oklahoma.

Nov. 5, 1957.

Rehearing Denied Dec. 4, 1957.

Luttrell & Luttrell, Norman, for plaintiffs in error.

James L. Fisk, Norman, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the attempted enforcement of certain building restrictions in a residential area of Norman, Oklahoma. The area is described as "All of Block One (1), Lots 1 through 24, of the Amended Plat of Wetzler Addition to" said city. At the time it was platted, this parcel of land was owned by Lewis W. Wetzler and Evelyn Wetzler, husband and wife. The building restrictions referred to are contained in a "Declaration Of Building Restrictions" which was drafted and filed of record with the above-mentioned "Amended Plat", by Mr. and Mrs. Wetzler. Among others, said "Declaration" contained the following provisions:

"B. No building shall be erected, placed or altered on any building plot on Lots 1 through 18 inclusive and Lot 20 in this subdivision until the building plans, specifications, and plot plan showing the location of such building have been approved in writing *as to conformity and harmony of external design* with existing structures in the subdivision and *as to location of the building with respect to topography and finished ground elevation,* by a committee composed of Lewis W. Wetzler, Evelyn M. Wetzler, and George J. Goodman, or by a representative designated by a majority of the members of said committee. In the event of death or resignation of the members of said committee, the remaining member or members, shall have full authority to approve or disapprove such design and location, or to designate a representative with like authority. In the event said committee, or its designated representative, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have

been submitted to it or in any event, if no suit to enjoin the erection of such building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required and this covenant will be deemed to have been fully complied with.

\* \* \* \* \* \*

"F. No trailer, basement \* \* \* garage \* \* \* (etc.), or other outbuildings erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any *structure* of a *temporary character* be used as a residence. \* \* \*

"G. The ground floor area of the main structure, exclusive of one-story open porches and garages, *shall be not less than 1000 square feet* in the case of a one-story structure. \* \* \*" (Emphasis ours.)

In 1954, plaintiffs in error, hereafter referred to as defendants, became the owners of Lot 8 in the above-described block, and in the Summer or Fall of 1955, began the construction of a brick residence thereon. A Mr. Hill contracted to purchase the property when completed.

According to the original plans therefor, the house was to contain, besides a complete bathroom, five rooms, considering as a room a so-called "Dining Space"; and, in addition what is usually termed an "attached garage", was inclosed within the walls and roof of the house. Exclusive of the garage, the total floor space in the house totaled only 820 square feet. Including the garage, it had more than 1090 square feet. Before construction of the house began, Mr. Hill decided that he wanted the space designated on the original plans as a garage, to be adapted for use as a den. Accordingly, the plans were changed to provide for the installation of a half-bath therein and the laying of a floor covering over its concrete floor. The plumbing for the half-bath was "roughed in" in 1955, but no bathroom fixtures were then installed.

Defendant in error, the owner of a home in the same block and adjoining the above-described property, commenced the present action in October, 1956, alleging, among other things, in substance, that the above-described residence was of a lesser size than required by, and did not conform to, the above-quoted restrictions, and that the plans for it never had been approved by the committee named therein, as required thereby. In his petition, plaintiff prayed that the alleged violations of the building restrictions be enjoined and that the court issue an order requiring restoration of the building site to its original condition before the alleged violations, or, in the alternative, that the existing structure be changed to conform to the restrictions of the area. After the issues were joined and a trial without a jury was held, the trial court entered judgment originally on January 30, 1956, in favor of plaintiff "requiring the defendants to modify the residence to comply with the restrictive covenants appertaining thereto, or remove the same and restore the property to its original condition."

Thereafter, this judgment was vacated upon the sustaining of motions for a new trial on behalf of both plaintiff and defendants.

At the beginning of the new trial, it was stipulated that the evidence introduced at the first one be considered as introduced at that one, but that the parties be not precluded from introducing additional evidence. Some of the evidence defendants introduced showed that, since the previous trial, fixtures had been installed in the half-bath, that the overhead garage door had been removed and the opening for it, had been closed, or filled, by a frame wall with a door and window in it. Notwithstanding this and other evidence, the trial court, after personally viewing the premises, again rendered judgment for the plaintiff, upon the following findings:

"The Court finds that *certain alterations* of the premises since the previous trial of said cause, and particularly, the insertion of a *panel* to replace the over-

head garage door, in that part of said premises which at the previous trial was found by the Court to be a garage and not living quarters, *are of a temporary nature,* that *they are as easily removable as they were to have been installed,* and by reason of the further fact of the *undesirability of said* area as living quarters, by reason of the *recessed level of the floor* thereof with respect to the house proper, the fact that the floor covering was applied directly to the concrete floor, and the concrete driveway approaches said area in its original condition, all of which results in a very real likelihood of its conversion back to a garage, and which *would be in violation of the restrictive covenants* appertaining thereto, as distinguished between a permanent dwelling meeting the square footage restrictive covenants, that said area referred to by Plaintiff as a garage and by Defendant as a den, does not now constitute bona fide living quarters as such as will bring the structure complained of within the square footage restrictive covenants of the addition.

"The Court further finds that *the architecture* of said structure *is not in compliance* with the restrictive covenants of the addition." (Emphasis ours.)

From said judgment, defendants have perfected the present appeal, contending the same is both contrary to law and to the evidence.

■ As to the Court's last above-quoted finding that "the architecture of said structure is not in compliance with the restrictive covenants * * *", we agree with the logical conclusion to be drawn from defendants' argument, viz., that such finding is both immaterial and surplusage, and furnishes the judgment no support. This, for the further reason that it pertains to a matter which, as we view it, was then not of controlling significance in the case. After defendants established, by undisputed evidence, that, of the committee designated by paragraph "B" of the "Declaration", supra, two members, Mr. and Mrs. Wetzler, had approved defendants' plans for the house, as changed, to provide for a den in the space originally designated as a garage, the question of whether or not the external design, or architecture, of the house was in compliance with the restrictive covenants was not for adjudication. Under said paragraph, this was obviated, or precluded by the Wetzlers' approval. Since they constituted the majority of the committee membership, their approval was the equivalent of the committee's approval, under the rule applicable generally at common law and specifically made applicable to public officers by statute. See Tit. 25, O.S.1951, § 31; Robberson v. Board of County Com'rs, Okl., 302 P.2d 784; Oklahoma Fullers Earth Co. v. Evans, 179 Okl. 124, 64 P.2d 899. That the other member of the committee, Mr. Goodman, did not give his approval in this regard (as he so testified) was consequently not controlling. We therefore conclude that the trial court's finding, as to the architecture of defendants' house, was contrary to the evidence and/or to the law applicable thereto.

■■ Nor can any of the court's other findings be regarded as supported by, or in conformity with, the evidence. Assuming arguendo, that the prohibition, in paragraph "F" of the restrictions, against the use as a residence of *"any structure* of a temporary character", is applicable to the "garage part" of a residence (built in such manner as to warrant its classification as a "permanent" type of construction) the evidence does not warrant the conclusion that the garage in question, as modified to become a den, is of a temporary character. All of the evidence is to the contrary, including the photographs of this part of the building that were introduced as exhibits. The undisputed evidence was, in substance, that, after it was decided to make a den of that area, its inner walls were finished in exactly the same manner as the interior of the other rooms in the house; and the defendant, Cecil Woods, testified further, as follows:

"We've completed the den by installing a door and screens on the outside of both outside doors and a wall nailed in with a window, four feet by four feet, square, aluminum windows, and lavatory and stool and chandeliers and light fixtures have all been installed and the floor has, was covered with cork asphalt tile and the interior and the outside of the interior of the den repainted, including both inside and outside the half-bath area and the panel was painted, not the panel, it's a built-in section, nailed together by two by fours and boards and doors and windows and frames, nailed in to the area on the east so that it is a permanent part of the building.

"Q. Tell the Court whether that manner of completion of the den constitutes a permanent structure? A. It does."

We think the above, undisputed by any evidence to the contrary, directly contradicts the court's hereinbefore quoted finding that the "alteration", including the section of wall forming the closure of the former garage door opening, and which the trial court referred to as "a panel * * * are of a temporary nature." There is no evidence to explain or to support the court's finding that "they (the alterations) are as easily removable as they were to have been installed * * *". We recognize that the trial judge, before announcing each of the judgments in this case, personally viewed the premises and had the opportunity of observing details about the structure that may not clearly appear in the photographs, or in the other evidence introduced at the trial, but, as stated in the Reply Brief: "A view of the premises cannot be made the basis of sustaining a judgment that is clearly against the evidence." Whether the trial judge's view be considered as evidence or not, there must be a record showing to support his judgment. See the discussion and authorities cited in Casper Lodge No. 22, I. O. O. F. v. Corbridge, 74 Wyo. 244, 286 P.2d 1047; 53 Am.Jur., "Trial", sec. 1128, Note 20; Annotation, 97 A.L.R. 335. Here there is no such showing.

■ Nor will the findings of the trial judge with reference to the "undesirability * * * as living quarters", of the area occupied by the den, serve to bolster the judgment. The restrictions, whose violation comprises the total and only basis of this action, say nothing about "undesirability", as such. No such consideration is specifically or expressly contemplated, or mentioned within the framework thereof. Clearly, for the purposes of this action, and in determining whether or not the restrictions had been violated, the trial judge's personal opinion as to that matter would not be controlling, since, as the evidence showed, "the building plans, specifications, and plot plan" of defendants' house had been approved by the committee "as to conformity and harmony of exterior design with existing structures in the subdivision and as to location of the building with respect to topography and finished ground elevation * * *", and the "ground floor area of the main structure * * *" was more than 1000 square feet.

■ Nor does the evidence show anything violative of the restrictions in the type of floor the den has. On the basis of the evidence, the court's reference to it as "recessed" does not mean that it is lower than the ground around it, but merely that it is lower than the floor of the rest of the house. The photographs show that there is one step constructed above this floor, as an aid to stepping from it into the kitchen of the house. The evidence fails to show any circumstances concerning the level of the den room's floor, or of the den in its entirety, rendering the house violative of the building restrictions involved herein.

■ In our opinion, the evidence in this case furnished no proper basis for the trial court's judgment and the injunctive relief therein decreed, and is clearly against the weight of the evidence, under the law applicable thereto. Said judgment is hereby reversed and remanded to the trial court with instructions to vacate it and enter judgment dismissing the action. In this

connection, see cases cited in 2A Okl.Dig., Appeal and Error, ☞1175 and 1176.

WELCH, C. J., CORN, V. C. J., and HALLEY, WILLIAMS, JACKSON and CARLILE, JJ., concur.